17881

Jacqueline V. MATTHEWS, Respondent, v. Grover L. PORTER and
U. S. Gypsum Company, of whom Grover L. Porter is, Appellant
(124 S. E. (2d) 321)

*Messrs. Wright, Scott, Blackwell & Powers,* of Florence, *for Appellant,*

*Messrs. Willcox, Hardee, Houck & Palmer,* of Florence, *for Respondent,*

March 5, 1962.

Moss, Justice.

Mrs. Jacqueline V. Matthews, the respondent herein, brought this action to recover damages for injuries sustained by her through the alleged negligence and willfulness of

Grover L. Porter, the appellant herein. It appears from the complaint and the testimony that on December 25, 1957, at approximately 10:30 P. M., the appellant was operating a Ford automobile in an easterly direction on U. S. Highway 76, between Mayesville and Lynchburg, South Carolina. It further appears that the automobile of the appellant was involved in a collision with an automobile being driven in a westerly direction by Isaac Singletary. It further appears that the two automobiles came to rest in U. S. Highway 76, and the automobile of the appellant was blocking the eastbound lane of traffic. It appears that the respondent was riding in an automobile operated by her husband in a westerly direction, over and along said highway, and arrived at the scene of the said collision soon after it occurred. The car in which the respondent was riding was stopped, pursuant to a flash light signal, on the eastern side of the scene of said collision. The respondent got out of the car in which she was traveling and offered her assistance to a physician, who had arrived upon the scene, in administering aid to the injured passengers in the two automobiles. The physician went to the car of the appellant and was administering aid to Mrs. Porter, who was still in said car. The respondent was standing by the physician on the western side of the appellant's car when a Ford automobile, being operated in an easterly direction on U. S. Highway 76, and driven by one Lewis McKnight, skidded sideways down the highway, after striking another car, crushing the respondent between the car of the appellant and the one driven by McKnight, resulting in personal injuries to her.

The complaint of the respondent charged the appellant with certain acts of negligence and willfulness which allegedly caused his collision with the Singletary automobile, and with permitting his automobile to block the highway so that others could not safely pass, and failing to warn approaching vehicles that the highway was so blocked. The complaint also charged that the personal injuries received by the respondent were proximately caused by the acts of negligence and willfulness of the appellant.

The answer of the appellant denied the material allegations contained in the complaint of the respondent and affirmatively alleged that the collision between the automobile driven by the appellant and the one driven by Isaac Singletary was solely and proximately caused by the negligence and willfulness of the said Isaac Singletary. The answer further alleged that the second collision was caused solely and proximately by negligence on the part of Lewis McKnight, and that at the time of the said collision, the scene and all traffic thereabout was under the control and direction of a law enforcement officer, and that at such time the automobile of the appellant had been so damaged in the first collision that it could not be removed, and the appellant was so injured that he was incapable of either removing the said automobile from the highway or taking any action to avoid the second collision.

This case was tried before the Honorable Steve C. Griffith, and a jury, at the 1960 term of the Court of Common Pleas for Florence County and resulted in a verdict for actual damages in favor of the respondent. At appropriate stages of the trial, the appellant made timely motions for a nonsuit and a directed verdict. These were refused. After the rendition of a verdict in favor of the respondent, the appellant made motions for judgment *non obstante veredicto,* and in the alternative for a new trial. These motions were likewise refused.

The motion of the appellant for a nonsuit was upon the ground that the only reasonable inference to be drawn from the testimony offered by the respondent was that her injuries were caused by the negligence of Lewis McKnight operating as the sole and proximate cause thereof. The motion for a directed verdict was made upon the grounds (1) That there is no evidence from which the jury can infer that the appellant was negligent in the first collision nor is there any evidence to show that he was negligent in the second collision; (2) That there was no evidence that any negligence of the appellant in the first collision was the proxi-

mate cause of the second collision whereby the respondent received her injuries; and (3) That the only inference to be drawn is that the negligence of Lewis McKnight intervened and was the sole cause of respondent's injuries. These grounds were preserved in the appellant's motion for judgment *non obstante veredicto,* or in the alternative for a new trial. This appeal followed and the exceptions of the appellant preserve the position taken by him in the lower Court.

The question of whether or not there was error in refusing the motions of the appellant for a nonsuit, directed verdict, judgment *non obstante veredicto,* and alternatively for a new trial, requires us to consider the testimony and the reasonable inferences to be drawn therefrom in a light most favorable to the respondent. If more than one reasonable inference can be drawn from the evidence, the case must be submitted to the jury. However, if the evidence is susceptible of only one reasonable inference, the question is no longer one for the jury but one of law for the court. *Green v. Bolen,* 237 S. C. 1, 115 S. E. (2d) 667.

The complaint charged the appellant with certain acts of negligence which caused the collision with the Singletary automobile. Isaac Singletary testified that the appellant drove his automobile over the center line of U. S. Highway 76, in the direction in which the appellant was traveling, and collided with his automobile in the latter's lane of travel. There was also testimony that the appellant's automobile was over the center line after the collision. A highway patrolman testified that he found debris left from the collision approximately two feet across the center line and in the lane of travel occupied by the automobile of Isaac Singletary. The appellant denied that he drove his automobile to the left of the center line of the highway in the direction in which he was going. He further testified that he was driving, at the time of the collision with Singletary, on "the proper legal right hand side of the road" and that he never did leave his side of the said road. There was,

in our judgment, sufficient evidence to support a finding by the jury that the appellant negligently drove his automobile onto the wrong side of the road and collided with the Singletary automobile.

It is the position of the appellant, assuming that he was negligent in connection with his collision with the Singletary automobile, that such negligence was cut off or insulated by the intervening negligence of one Lewis McKnight, which solely and proximately caused the injuries to the respondent, and such could not have been foreseen by the appellant in the exercise of reasonable care and was not a natural and probable consequence of his original negligence.

Our decisions are to the effect that liability exists for the natural and probable consequences of negligent acts or omissions, proximately flowing therefrom. The intervening negligence of a third person will not excuse the first wrongdoer, if such intervention ought to have been foreseen in the exercise of due care. In such case, the original negligence still remains active, and a contributing cause of the injury. The test is to be found in the probable consequences reasonably to be anticipated, and not in the number or exact character of events subsequently arising. *Woody v. South Carolina Power Co.,* 202 S. C. 73, 24 S. E. (2d) 121.

In the case of *Brown v. National Oil Co. et al.,* 233 S. C. 345, 105 S. E. (2d) 81, we said:

"It is equally well settled that to establish liability, it is not necessary that the person charged with negligence should have contemplated the particular event which occurred. It is sufficient that he should have foreseen that his negligence 'would probably result in injury of some kind to someone. The wrongdoer may be held liable for anything which, after the injury is complete, appears to have been a natural and probable consequence of his negligence.' *Hicklin v. Jeff Hunt Machinery Co.,* 226 S. C. 484, 85 S. E. (2d) 739, 743. 'If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither fore-

saw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable.' Restatement, Torts, Section 435.

"In 38 Am. Jur., Negligence, Section 64, it is stated: 'The rule is that when an injury occurs through the concurrent negligence of two persons, and it would not have happened in the absence of the negligence of either person, the negligence of each of the wrongdoers will be deemed a proximate cause of the injury, although they may have acted independently of one another; and both are answerable, jointly or severally, to the same extent as though the injury were caused by his negligence alone, without reference to which one was guilty of the last act of negligence.' "

In the case of *Tobias v. Carolina Power & Light Co.*, 190 S. C. 181, 2 S. E. (2d) 686, a pedestrian on the highway was struck by a passing motorist and thrown against exposed guy wires of an electric light pole installed and maintained by the power company in the center of the highway. It was held that if the power company was negligent in installing and maintaining the pole, it could not escape liability on the theory that the negligence of the motorist was an efficient intervening cause. We quote the following from this case:

"While the general rule is that, if, subsequently to an original wrongful or negligent act, a new cause has intervened, of itself sufficient to stand as the cause of the injury, the former must be considered as too remote, still, if the character of the intervening act claimed to break the connection between the original wrongful act and the subsequent injury was such that its probable or natural consequences could reasonably have been anticipated, apprehended, or foreseen by the original wrongdoer, the causal connection is not broken and the original wrongdoer is responsible for all the consequences resulting from the intervening act."

We have held that negligence, to render a person liable, need not be the sole cause of an injury; it is sufficient to show that it is a proximate concurring cause. *Benton v. Pellum*, 232 S. C. 26, 100 S. E. (2d) 534,

and *Padgett v. Colonial Wholesale Distributing Co.,* 232 S. C. 593, 103 S. E. (2d) 265.

■ Evidence of an independent negligent act of a third party is directed to the question of proximate cause. To exculpate a negligent defendant, the intervening cause must be one which breaks the sequence or causal connection between the defendant's negligence and the injury alleged. The superseding act must so intervene as to exclude the negligence of the defendant as one of the proximate causes of the injury. *Riggs v. Akers Motor Lines,* 233 N. C. 160, 63 S. E. (2d) 197.

In the case of *Henderson et al. v. Powell et al.,* 221 N. C. 239, 19 S. E. (2d) 876, we find the following apt language:

"No negligence is 'insulated' so long as it plays a substantial and proximate part in the injury. Restatement of the Law, Torts, sec. 447. 'In order to relieve the defendant of responsibility for the event, the intervening cause must be a superseding cause. It is a superseding cause if it so entirely supersedes the operation of the defendant's negligence that it alone, without his negligence contributing thereto in the slightest degree, produces the injury.' "

We have heretofore found that there was ample testimony to sustain the verdict of the jury finding the appellant guilty of negligence in his collision with the automobile of Isaac Singletary. As a result of such negligence, the highway was blocked by the wrecked car of the appellant. The complaint charges the appellant with negligence in permitting the automobile he was operating to block the highway to such an extent that other vehicles operated thereon could not pass, and in failing to warn approaching vehicles that the highway was so blocked and impassable.

Lewis McKnight testified that he was driving in an easterly direction over and along U. S. Highway No. 76 and approached the scene of the collision where the road was blocked by appellant's car. He testified that the night was dark, foggy and a drizzling rain was falling. He was driving at about forty-five miles per hour. He further testified that

as he approached the point of collision that he saw a car facing him with the headlights burning. Upon seeing the car, he put on his dimmers and slowed down. He testified that there was a car parked in his lane of travel which he sideswiped and this caused him to slide down the road and hit the car of the appellant. He further testified that the car he sideswiped did not have any lights on it, and that upon seeing it, he turned in an effort to avoid a collision with it and then "my car went to slipping sideways." He was asked, "Was anybody out here on the road with a flashlight or handkerchief to warn you?" And he answered, "No, sir, I didn't see no warning or nothing." A witness for the appellant testified that "I have no recollection or idea if anyone was flagging traffic" in the direction from which Lewis McKnight came. There was testimony on behalf of the appellant that several people were trying to stop traffic with a flashlight on the highway in the direction from which Lewis McKnight came. It is apparent from the recited testimony that a question of fact arose as to whether Lewis McKnight was given warning that the highway was blocked and impassable. The duty was upon the appellant to give such warning. In the case of *Ponder v. National Convoy & Trucking Co., et al.,* 206 N. C. 266, 173 S. E. 336, cited with approval in the case of *Montgomery v. National Convoy & Trucking Co.,* 186 S. C. 167, 195 S. E. 247, it was said:

"* * * The defendant Floyd S. Williams, after he found himself unable to move the truck and the trailer, because the wheels of the truck had stuck in the soft ground off the pavement, owed the duty to plaintiff and others approaching the obstruction in the highway, on automobiles or trucks, to exercise reasonable care to warn them of their peril. A failure to perform this duty was negligence. * * *"

The testimony is indefinite as to the time elapsed between the collision of appellant's car with the one operated by Isaac Singletary and the collision of the automobile operated by Lewis McKnight with appellant's car. There is testimony that the second collision occurred fifteen to forty-five minutes

after the original collision. There is also testimony that the appellant did nothing to warn approaching motorists that the road was blocked and impassable. It is the position of the appellant that he was disabled in the first collision and was unable to give any warning to other persons using the highway. He asserts that warnings of the collision were given by other parties. There is evidence that on the eastern side of the wreck unidentified persons, using flashlights, were warning the traveling public of the wreck. There is also disputed testimony as to whether warnings were given on the western side of the wreck. The appellant asserts that at the time of the second collision, the highway was under the control of a law enforcement officer and such control and authority intervened between the negligence of the appellant and the second collision.

In the case of *Johnson v. Sunshine Creamery Company,* 200 Minn. 428, 274 N. W. 404, it was held that the fact that an hour elapsed between the first collision, caused by the defendant's negligence, which obstructed the highway, and the approach of the car in which the plainitff was riding which collided with the disabled trucks, did not preclude a finding that the negligence causing the first collision was also a proximate cause of the plaintiff's injuries received in the second, the Court saying that the mere lapse of time would not necessarily break the chain of causation, and that the question whether the negligence of the driver of the car in which the plaintiff rode was an intervening independent cause of his injury was an issue of fact for the jury, under the showing that the two trucks completely blocked the highway, and that the flares set out were ineffective and were taken by approaching travelers to indicate only a hole in the shoulder of the road.

In the case of *Van Derbeek v. Conlon,* 41 N. J. Super. 574, 125 A. (2d) 531, it appeared that a defendant whose negligence had caused a collision leaving the road blocked with two vehicles, and that an hour later, after the state police had arrived and set out flares, another driver crashed

into one of the disabled vehicles and killed plaintiff's decedent, who was standing nearby. The negligence relied upon was apparently the alleged failure to take steps to warn approaching traffic, but an instruction that if an hour had elapsed between the two accidents and this was found to be a reasonable time for the police to take control and provide adequate warning, any active dangerous condition created by the first accident was rendered inactive and incapable of causing further harm, while held not to have prejudiced the plaintiffs in the instant case, was disapproved, the Court saying that the arrival and taking charge by the police were circumstances to be considered but could not be said as a matter of law to have cut off the effect of the prior negligence.

In an action for injury alleged to be due to the neglect of a duty on the part of the defendant, it is no defense that a similar duty rested upon another person. One upon whom the law devolves a duty cannot shift it to another, so as to exonerate himself from the consequence of its nonperformance. 38 Am. Jur., Negligence, sec. 13, page 655. Since the appellant's negligence had caused the highway at the scene of the collision to be blocked, it was his duty to warn others using the highway of the dangerous condition he had created. He could not delegate this duty to another, even though he was a law enforcement officer, and escape the consequences for its nonperformance by such officer. The appellant asserts also that he was so disabled in the first collision that he was unable to give a warning that the road was obstructed. The respondent testified that the appellant was outside of his car and walking around and that, "I asked Mr. Porter if he wanted to sit down, and he said: 'No, I will stand here. I am all right.'" This witness further testified that the appellant wasn't being held up and that he was standing beside his car. This testimony raised a question of fact as to whether the appellant was so disabled that he could not give warning of the dangerous condition that had been created by his negligence.

We do not find any merit in the appellant's contention that the testimony shows that the chain of causation was broken by the negligent conduct on the part of Lewis McKnight, nor can we say as a matter of law that the negligence of the appellant was insulated by the acts of McKnight. The evidence justifies an inference that the negligence of the appellant was a substantial factor in bringing about the collision with his car and that of the car driven by Lewis McKnight. It is further inferable from the evidence that the respondent would not have been injured in the absence of negligence on the part of the appellant. Assuming that Lewis McKnight was negligent this fact would not relieve the appellant from liability, if the jury found, as we must assume they did, that the negligence of the appellant concurred as a proximate cause of respondent's injuries. The testimony in this case presented a factual issue to be determined by the jury. We do not think the trial Judge committed error in refusing the motions of the appellant for a nonsuit, directed verdict, judgment *non obstante veredicto,* or, in the alternative for a new trial.

The appellant alleges that the trial Judge committed error in refusing his motion for judgment *non obstante veredicto,* or in the alternative for a new trial, upon the ground that the verdict of the jury was against the clear weight and preponderance of the evidence. What we have heretofore said disposes of this exception.

It is undisputed that the wife of the appellant was in the car with him when the collision with Singletary took place. She was injured in such collision and was still in the car of the appellant and being attended by a physician at the time the car of McKnight collided with appellant's car. The wife of the appellant did not appear as a witenss at the trial of the case. In an effort to explain the absence of his wife as a witness, the appellant testified that she was asleep when the first collision took place. At the time of the second collision, he testified that his wife was lying across the front seat of his car and being attended by a doctor, and due to her con-

dition and position she did not see the second collision. He also stated that her emotional status was such that it was not proper for her to be present as a witness. Upon cross-examination of the appellant by counsel for the respondent he was asked if his wife had made a claim against him for her injuries. Upon objection being made to this question, the jury was excuesd and in their absence the appellant was asked if his wife had made a claim against him or his insurance company. Still in the absence of the jury, the witness testified that he understood his wife "has received an amount", apparently from appellant's insurer. The trial Judge held that he would permit counsel to ask the appellant if his wife had made a claim against him but that they could not question him with reference to insurance. Upon the return of the jury to the courtroom, the appellant was asked: "Isn't it true that your wife has made claim against you for these injuries she sustained?" The answer was, "Yes". The appellant asserts that it was error for the trial Judge to permit counsel for the respondent to examine him with regard to a claim made by his wife, asserting that this examination inferred to the jury that the appellant had liability insurance and such testimony was prejudicial.

It is well settled in this State that if a party fails to produce the testimony of an available witness on a material issue in the cause, it may be inferred that such testimony, if presented, would be adverse to the party who fails to call the witness. *Ex Parte Hernlen,* 156 S. C. 181, 153 S. E. 133, 69 A. L. R. 443; *Wingate v. Postal Telegraph & Cable Co.,* 204 S. C. 520, 30 S. E. (2d) 307; *Johnson v. Windham et al.,* 224 S. C. 502, 80 S. E. (2d) 234, and numerous other cases. Generally, the rule above stated is applied when the uncalled witness is a relative of the party failing to call such witness, or within some degree of control of said party. *Davis v. Sparks,* 235 S. C. 326, 111 S. E. (2d) 545. It was proper for the appellant to testify as to the reason for his wife's absence and to explain that she did not have any knowledge of the facts surrounding the

collision. The respondent had the right to cross-examine the appellant and to rebut the explanation made by him of his wife's absence. The testimony elicited on cross examination tended to show another reason for the absence of the wife of the appellant and to disprove the explanation made by him. We do not think that the cross-examination of the appellant created the inference that he had liability insurance. This exception is overruled.

The respondent was injured on December 25, 1957. She was married on November 2, 1957. She testified that for more than five years she had done secretarial work for two physicians practicing in Florence, South Carolina, and that she had resigned from this position in October, 1957 in order to get married and accompany her husband to Columbia, South Carolina, where he was stationed in the United States Army. She testified that she had made application for secretarial work with an employment agency in Columbia and she intended to go to work following the Christmas holidays. She was permitted to testify that during the time of her employment her compensation was $65.00 per week. The appellant objected to the aforesaid testimony upon the ground that such was irrelevant and immaterial to any issue in the case and that such testimony permitted the jury to indulge in speculation as to whether the respondent might at some time in the future sustain a loss of income due to her injuries.

The respondent did not claim as damages any wages or salary lost as a result of the injuries she sustained. She did claim damages for impairment of her earning capacity. Loss or impairment of earning capacity, consequent to the injuries to the person, is a proper element of compensation. *Campbell v. Hall et al.,* 210 S. C. 423, 43 S. E. (2d) 129; *Haselden v. Atlantic Coast Line Ry. Co.,* 214 S. C. 410, 53 S. E. (2d) 60. From the last cited case we quote the following:

"* * * In arriving at the verdict the jury could consider the loss of future earning power which requires a considera-

tion of all matters which relate to the issue of the disability, the effect which that disability will have on plaintiff's capacity to work, the extent to which the disability will impair the plaintiff's earning capacity, the present value of all losses due to his impaired earning power, *Jones v. Atlantic Refining Co.*, D. C., 55 F. Supp. 17, such physical pain and suffering as reasonably certain will of necessity result in the future from the injury * * *." In 81 A. L. R. (2d), at page 737, it is said:

"In ruling on the admission of evidence of past earnings, some courts have taken into consideration the fact that at the time of the accident causing injury or death, the victim of the defendant's misconduct was not employed and therefore, had no evidence of present earnings to aid the jury in assessing his damages from loss or impairment of earning capacity. In such cases evidence of earnings made prior to the date of the accident has generally been admitted." Reference is had to the citation for the cases supporting the above question.

The purpose in admitting evidence of earnings from past employment in any case is to enable the jury to determine what the future earnings would have been but for the injury. Any earnings from such employment which may fairly and legitimately throw light upon what the probable future earnings would have been is admissible for that purpose. There seems to be no fixed rule as to time in such inquiry, but past employment must be sufficiently related to the probable future employment of the plaintiff to be reasonably considered as a guide for determining future earnings. *Fox v. Asheville Army Store, Inc.*, 216 N. C. 468, 5 S. E. (2d) 436.

In the case of *Pawlicki v. Detroit United Railway Co.*, 191 Mich. 536, 158 N. W. 162, the plaintiff had been, at some time before his injury, a shoemaker, but did not intend to resume that business. There was objection made to his fitness for his previous employment and what he had been able to earn in such employment. The Court, in sustaining the admission of such testimony, said:

"His fitness for that vocation and what he had recently been able to earn in it were the only available evidence from

which his loss by reason of destruction of earning capacity could be weighed, and we think was clearly competent for the jury to take into consideration, for whatever light it might throw on the question of damages."

Even though the respondent was not employed at the time of her injury this would not deprive her of her right to damages for impairment of earning capacity. Evidence of what the respondent had previously earned, when employed, was properly admitted for consideration by the jury. The evidence certainly was not too remote since the respondent had been employed regularly and had only stopped work about two months previous to her injury. We think the evidence to which the appellant objected was properly received. This exception of the appellant is overruled.

The judgment of the lower Court is affirmed.

TAYLOR, C. J., and LEWIS and BUSSEY, JJ., and LIONEL K. LEGGE, Acting A. J., concur.