## 18699

Jake E. SMITH, Sr., as Administrator of the Estate of Jake E. Smith, Jr., Respondent, v. Charlie Franklin BLACKWELL, Appellant.

(156 S. E. (2d) 867)

*Messrs. Turner, Padget, Graham & Laney,* of Columbia, and *Lever & Duncan,* of Lexington, *for Appellant,*

*E. Pickens Rish, Esq.,* of Lexington, *for Respondent,*

September 1, 1967.

BRAILSFORD, Justice:

These actions for the wrongful death of Jake E. Smith, Jr., age 20, and for his pain and suffering were tried together, and each resulted in a verdict for plaintiff. Judgments have been entered upon the verdicts, and the defendant has taken a consolidated appeal from both judgments. For convenience, we shall disregard the dual aspect of the proceedings below. The exceptions complain of error in the refusal of defendant's motion for a directed verdict and in the court's instructions to the jury. The primary issue presented is whether the evidence, which we summarize below, raised an issue for the jury under the doctrine of last clear chance.

On May 13, 1965, at about 12:45 A.M., the defendant was driving a pick-up truck on a secondary state highway in Lexington County. After passing Keisler's store and as he approached Red Bank, he came upon young Smith, who was prostrate on the highway. According to the defendant's testimony, he saw an object in the highway at some distance from the point of impact. However, he thought that it was a paper bag and took no precautionary measures. He gives the following description of what he then observed and did:

"The gentleman was laying in the road, flat of his back, with his head turnt the way I was coming from, from towards Keisler's store. His feet was towards Red Bank. And, just looking from the back of his head, he had on a tan looking shirt; it looked kind of khaki looking. And his hair was some kind of brown hair. It just looked like a paper bag that had blowed in the road. And of course just the next split second then I was right straddle of it almost and I could see his face and I could see it was a person. At that time, I was done straddle of him. I pulled my truck to the left a little bit to try to straddle him. I thought it was a dead

man, really. And I thought maybe if I could just straddle him and not hit him, I could just go on over him and it wouldn't touch him. But as I drove over him, I could hear the rumbling under the truck and I knowed that I had struck him."

The defendant had an unobstructed view of the highway after passing a crest some 1350 feet from the scene. The weather was clear, and the highway was dry. The asphalt surface was 20½ feet wide. The point of impact was in defendant's lane of travel, within a foot or two of the center of the highway.

On the afternoon preceding Smith's death, an automobile occupied by him and a companion broke down some miles from the scene of the accident. He and his companion left the disabled automobile at about dusk, walking in different directions. The companion testified that Smith then was sober and apparently in full possession of his faculties. The record does not reveal what befell this young man after he separated from his companion and until about 12:10 A.M. when he was seen, prostrate on the highway, by a passing industrial worker, who testified at the trial.

This witness had left the General Electric plant at Irmo at 11:40 P.M. and was driving to his home near Fairview. As he approached Keisler's store, he saw an object in the road which, within stopping distance of it, he recognized as a man. However, either because he was "afraid" or because he did not want to get "involved," he continued homeward. He *thinks* that he stopped at Keisler's store to see if he could get someone to go back to the scene with him. However, "they didn't," and he went on home and to bed, without making any report of what he had seen. Two other industrial workers, each of whom drove past the scene between 12:15 and 12:30 A.M., had about the same experience as the first and reacted to it in the same lamentable fashion. Each testified that he recognized the object on the highway as the prone figure of a man in time to have stopped short of it. Both drove by and continued homeward without attempting to render assistance or summon help.

It is inferable from the record that another person, who passed the scene while the intestate was lying on the highway, made or instigated a report to the highway patrol. However, the patrolman who responded to the report arrived at the scene too late to avert the tragedy.

The defendant first contends that plaintiff's intestate was guilty of contributory negligence as a matter of law, and that his motion for a directed verdict should have been granted on this ground. The trial judge ruled that the evidence conclusively established the intestate's antecedent negligence in placing himself in the perilous situation in which he was injured, and instructed the jurors that plaintiff could recover only if they found from the evidence that the defendant had a last clear chance, as defined to them, to avoid harming him. Therefore, under the law of this case, if the evidence was insufficient to raise a submissible issue under this doctrine, the verdict may not stand. If the evidence was sufficient to raise such an issue, the defendant's motion was properly overruled.

The defendant contends that the evidence was insufficient to establish either of the following essential conditions of the application of the doctrine, *i.e.*, (1) that the defendant either discovered or should have discovered Smith's peril in time to have avoided injuring him; or (2) that Smith was in a helpless condition immediately before his injury.

We think that the evidence, particularly that as to the defendant's unobstructed view of the highway on a clear night, the observations actually made at the scene by other travelers and by the defendant, the absence of other traffic or distracting influences, and Smith's position near the center of the highway, raised an issue for the jury as to whether the defendant, in the exercise of due care, should have discovered Smith's perilous situation in time to have either stopped his truck or turned it aside, and thus avoid the harm which ensued.

The defendant's own vivid account of Smith's appearance on the highway, and the testimony which indicated that he had occupied that position of

extreme peril for more than half an hour, apparently oblivious to passing vehicles, were clearly sufficient to support an inference that he was intoxicated, drugged, or in some manner bereft of his faculties and helpless on the highway. It may be argued with reason that the only alternative inference is an intention to commit suicide, against which there is a strong presumption.

The defendant contends that statements made by Smith after he was injured show that his presence on the highway at the time of the accident was voluntary. This is not the only inference which may be drawn from this testimony. Furthermore, under all of the circumstances, the jury reasonably could have regarded these statements as completely irrational and given no weight to them.

Having ruled that the only reasonable inference from the evidence was that Smith had negligently placed himself in a position of peril, the trial judge bypassed a conventional charge on the defense of contributory negligence. Instead, he instructed the jury that plaintiff could recover only if the defendant had a last clear chance to avoid the injury. The defendant assigns this omission from the charge as error. He does not challenge the accuracy of the court's exposition to the jury of the doctrine of last clear chance, which requires no further comment.

In order to be contributory, the negligence of an injured person must combine and concur with the negligence of another as a proximate cause of the injury. *Seay v. Southern Ry.,* 205 S. C. 162, 174, 31 S. E. (2d) 133, 138. Conversely, the doctrine of last clear chance applies only where the antecedent negligence of the injured person has become remote in the chain of causation and a mere condition of the injury. *Jones v. Atlanta-Charlotte Air Line Ry.,* 218 S. C. 537, 550, 63 S. E. (2d) 476, 482, 26 A. L. R. (2d) 297. The two doctrines are mutually exclusive. Both can not apply to the same state of facts. Negligence which has become remote in the chain of causation is not contributory.

■ The effect of the court's action was to resolve the the issue of the intestate's negligence against plaintiff and to submit to the jury the issue of proximate cause, measured by the last clear chance formulation. Findings by the jury that defendant had the last clear chance to avoid the injury and that plaintiff's antecedent negligence was remote in the chain of causation, are implicit in the verdict. Since these findings negate the charge of contributory negligence, the omission of instructions on this defense could not have prejudiced the defendant.

Affirmed.

Moss, C. J., and LEWIS and BUSSEY, JJ., concur.

LITTLEJOHN, J., dissents.

LITTLEJOHN, Justice (dissenting) :

Being of the opinion that the motion for a directed verdict should have been granted, I would respectfully dissent.

The evidence in this case establishes to the exclusion of all other reasonable inferences that the deceased voluntarily lay down in the road in the nighttime because he was tired. This is conclusively established by the testimony of plaintiff's witness Boyd Rish and of the defendant, who talked with the deceased while he was conscious just after the accident. Mr. Rish testified: "He said he walked until he got tired and laid down." From the testimony of Patrolman Allen Edward Hughes, who followed the deceased to the hospital, we quote the following:

"Q. Was any statement made as to why he was lying in the road?

"A. The doctor went on and asked him, 'Well, why were you laying in the road?' And he said, 'If you had walked as far as I had' or 'If you were as tired as I was,' or something, 'you would lay down too.'

"Q. 'You would lay down too'?

"A. Yes, sir.

"Q. And that was 'in the road'?

"A. Yes, sir."

Any conclusion than that he voluntarily lay down would be conjecture, as indicated by the trial judge at the end of all the testimony, when he stated to counsel:

"Well, there would be no basis upon which to put any kind of conjecture. His statement to others was that he just laid down, that he got tired. That's the only evidence in the case on it, and I have to hold, as a matter of law, that he was negligent in so doing."

Under the doctrine of last clear chance relied upon by respondent, the defendant might be held liable in spite of the negligence or even recklessness of the deceased if he had a clear opportunity by the exercise of ordinary care to avoid the injury after becoming aware that the deceased was in a position of peril.

The evidence shows that the defendant was driving his pickup truck within the speed limits along a rural road in the middle of the night. He should not have been expected to anticipate that some person would be lying in the public roadway. He testified that he was at first of the impression that the object in the road was a paper bag and, further, that the deceased had on a tan looking shirt and his hair was some kind of brown. It is understandable that he might think the same to be a bag, as did witness Ben O. Smith, who passed the deceased earlier, and testified that he thought it was "a bag that may have been a crocus sack sheet." The defendant testified that it was not until he was "right straddle of it almost and I could see his face and I could see it was a person." The defendant was not required to conduct himself as though the object in the road was a person until the circumstances were such as would lead a reasonably prudent driver to believe the object was probably a human being.

I conclude that this defendant found himself in a position of imminent peril while he himself was driving prudently and as a matter of law he did all that should be expected of

him under the circumstances. The doctrine of last clear chance is not applicable where the emergency is so sudden that there is no time to avert the accident. The last clear chance must be a clear one.

I would reverse the lower court and enter judgment for the defendant.