Julian W. **RAWL**, Administrator of the Estate of Edwin E. Rawl, Jr., Appellee,

v.

**UNITED STATES of America,** Appellant.

No. 84–2333.

United States Court of Appeals, Fourth Circuit.

Argued Sept. 10, 1985.

Decided Dec. 4, 1985.

Rehearing and Rehearing En Banc Denied Jan. 21, 1986.

Gary W. Allen, Acting Director (Torts Branch, Civil Div., U.S. Dept. of Justice, Washington, D.C., Henry Dargan McMaster, U.S. Atty., Columbia, S.C., Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., on brief), for appellant.

Arnold S. Goodstein (Diane Schafer Goodstein, North Charleston, S.C., on brief), for appellee.

Before PHILLIPS and MURNAGHAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

MURNAGHAN, Circuit Judge:

The United States Government appeals from a decision in the district court awarding damages in a wrongful death action. Edwin E. Rawl, Jr., and his wife Josie W. Rawl died in a small airplane crash outside of Grand Strand Airport at Myrtle Beach, South Carolina.[1] Plaintiffs, the Rawls' children, claimed damages under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) for the death of Edwin E. Rawl, Jr., arguing that the United States Air Force air traffic controllers and the Federal Aviation Administration were negligent in providing assistance to the decedent. Judge C. Weston Houck of the District of South Carolina found that the government was negligent and that the negligence proximately caused Rawl's death. Judge Houck assumed for argument's sake that Rawl, the pilot of the airplane, also was negligent, but declined to bar the claims on grounds of contributory negligence because he deemed the government's negligence to be an intervening and superseding occurrence, relieving Rawl of responsibility for his own death. We do not disturb the lower court's finding as to negligence on the part of the government, but reverse the contributory negligence ruling, vacating the award of $300,-000.

## I. Background

The facts are far from simple. The incident occurred in airspace around the Grand Strand Airport near Myrtle Beach, South Carolina. Grand Strand functioned principally for non-military aircraft. Because Grand Strand Airport had no radar of its own, the nearby Myrtle Beach Air Force base operated radar approach control ("RAPCON") for Grand Strand.

Rawl was an experienced pilot with over 2500 hours of flight time. He was certified to fly airplanes by visual flight rules ("VFR"), under which a pilot must be able to fly by sight, with a visibility of at least three miles. 14 C.F.R. § 91.105 (1983). Rawl was not certified to fly by instrument flight rules ("IFR"), under which a pilot must be able to fly by instruments alone. 14 C.F.R. §§ 91.115–.129 (1983).

On February 17, 1978, Rawl planned to fly his Beechcraft Bonanza from Grand Strand Airport to Greenville, North Carolina, pick up his wife there and return to Myrtle Beach in order to host an 8:00 p.m. dinner associated with his primary business activities. Prior to take-off from Grand Strand, Rawl contacted the Flight Service Station ("FSS") several times for a weather report: the report called for VFR conditions with hazy visibility and forecast the deterioration of those conditions in mid-evening. When Rawl departed Grand Strand at 5:45 p.m., conditions had already deteriorated to visibility of less than two miles with fog and haze present.[2] There was a broken layer of cloud at 500 feet and another layer of clouds at 3000 feet.

Rawl arrived at the Greenville airport and picked up his wife, departing again by 7:00 p.m. The sun had set. The sky was dark.

At 7:19:40 p.m. Rawl made contact with RAPCON at Myrtle Beach. Weather conditions were a ceiling of 400 feet overcast with visibility of two miles and fog and haze. At 7:20:52 p.m. Rawl told RAPCON that he was flying VFR. The RAPCON operator responded that he could not let Rawl come in under VFR, and suggested Rawl come in under Special VFR.[3] Rawl concurred.[4]

1. The claims for the death of Mrs. Rawl have been settled previously and are not here involved.

2. Conditions had deteriorated so rapidly that, Rawl was offered—and accepted—an IFR clearance in order to depart Grand Strand, a clearance he was not certified to accept.

3. Under Special VFR, visibility must be at least one statute mile and the special minimums applicable under the regulation are inapplicable between sunset and sunrise. Generally speaking, Special VFR allows a pilot to fly in controlled airspace so long as the pilot avoids clouds and has at least one mile visibility. 14 C.F.R. § 91.107 (1985).

4. A pilot must have instrument flight rating, which Rawl did not have, to accept Special VFR clearance after sunset. 14 C.F.R. § 91.107(e) (1985).

As Rawl approached the airport, he was told to expect a ten minute delay while another plane, a Cessna, was brought in under Special VFR. While Rawl listened on the same frequency, RAPCON attempted to bring the Cessna into the airport. The Cessna made several passes over the airport and was unable to locate it. An emergency situation was declared for the Cessna at 7:47:05; eventually the Cessna landed safely but came to rest in the grass at the end of the runway.

At around 8:00 p.m. Rawl was cleared to approach the airport. RAPCON instructed Rawl to maintain Special VFR at or below 1500 feet. While Rawl flew toward Grand Strand, RAPCON suggested that another plane divert to Wilmington, North Carolina, where the weather was significantly less opaque. A similar suggestion was not made to Rawl nor, the district court found, did Rawl hear the suggestion made to the other flight; Rawl was on a different radio frequency. *Rawl v. United States,* Civ. Act. No. 2:80–2525–2, slip op. at 7 (D.S.C. Oct. 12, 1984).

At 8:04 p.m., Rawl informed RAPCON that he had four hours of fuel left, and that, at his then-current altitude of 2500 feet, he would be unable to see the airport as he approached. At the time, Rawl was flying between two layers of cloud at 1000 feet and 3000 feet, and in darkness. The presence of the Atlantic Ocean to the east and an unpopulated section of country to the west further limited Rawl's ability to orient his aircraft by visual reference points. Rawl requested vectors for the airport so that he could "slip right down under" the weather and land. RAPCON instructed him to descend to 1600 feet.

The key series of instructions began at 8:05:17 p.m. Rawl was flying on a heading of 45° and was told to turn left 135° to a heading of 270°. At 8:06:36, RAPCON asked Rawl to state his heading, whereupon a miscommunication occurred. Rawl stated that his heading was 300°, but a portion of the transmission was inaudible; RAPCON heard only "30". The district court found that RAPCON did not ask for a clarification and instead "incorrectly assumed that the heading given was 030 and, based upon that false assumption, told Rawl to turn right to 120."

A few moments later, a supervisor at RAPCON pointed out the possibility of a miscommunication to the air controller on duty, and the latter asked Rawl for a clarification. Rawl advised that his response had been 300° and that his heading at the time of clarification was 330°. RAPCON told Rawl to turn left to 220°. Shortly after the instruction, the plane crashed, killing Rawl and his wife.

Experts at trial agreed that "spatial disorientation"[5] caused Rawl to go into a power dive and crash. Understandably, there was great dispute as to the proximate cause of Rawl's spatial disorientation.

The district court found that the negligence of the air traffic controller at RAPCON caused the spatial disorientation and the accident, and rejected the government's defense of contributory negligence on the part of Rawl. The district court relied on two theories of government negligence. Under the first theory, RAPCON failed to follow standards of due care in directing Rawl back toward the airport; the result was spatial disorientation. According to the district court, the RAPCON controller violated section 1592 of the Air Traffic Control Manual ("the Manual") by directing Rawl to make a series of "abrupt ma-

---

**5.** Spatial disorientation is a condition caused by conflicts between a pilot's visual references and inner sense of orientation in space. A pilot who is deprived of visual reference points, and who has not been certified to fly on instruments alone, may become enveloped in false sensations and will not know, quite literally, which way is up. The confusion often results in loss of control of the airplane.

neuvers." [6] Abrupt maneuvers with no visual cues outside the aircraft can cause spatial disorientation. The district court also found RAPCON negligent in relying on Rawl's "obviously incomplete" heading report of "30 degrees." The district court concluded that "reasonable prudence and care" required RAPCON to ask for a clarification before issuing the initial vector change; the result of the initial vector followed by the heading given just after the clarification was a hard right turn followed by a hard left turn within less than one minute. Both acts of negligence, the court found, caused the spatial disorientation and the crash.

The second theory of negligence faults RAPCON for failing to suggest alternative airports where VFR conditions prevailed. The district court found that the RAPCON controller's omission violated section 1591 of the Manual.[7] The Court reasoned that the omission was a proximate cause of the crash because "it is reasonable to assume that Mr. Rawl might have chosen to land elsewhere, thus avoiding the subsequent crash" because another pilot diverted to another airport at the suggestion of RAPCON. We have, in light of our determination on the subject of contributory negli-

gence, no occasion to inquire into the validity of the findings that the government was negligent and that the negligence amounted to proximate cause, and proceed on the assumption that they were not clearly erroneous.

The district court rejected the government's defense of contributory negligence on the part of Rawl. It described the negligent acts and omissions of RAPCON as the "intervening" or "superseding" cause of the accident.[8] Thus, under the court's view, the negligence of RAPCON was the sole cause of the accident, and Rawl's negligence did not contribute. Hence, it was claimed, it did not nullify the negligence of the government.

## II. *Discussion*

We do not address the issue of whether the government was negligent at any length, given that the record on appeal shows substantial evidence to support the district court's findings in that regard. Accepting the district judge's determination as to negligence on the part of the government, we turn to the legal standard applied in determining a lack of relevant contributory negligence on the part of Rawl. Because we find that the district court's appli-

6. Section 1592 of the Manual outlines procedures designed to help controller assist pilots not qualified to operate in IFR conditions.

1592. Radar Assistance Techniques
Use the following techniques to the extent possible when you provide radar assistance to a pilot not qualified to operate in IFR conditions.
a. Avoid radio frequency changes except when necessary to provide a clear communications channel.
b. Make turns while the aircraft is in VFR conditions so it will be in a position to fly a straight course in IFR conditions.
c. Have pilot lower gear and slow aircraft to approach speed while in VFR conditions.
d. Avoid requiring a climb or descent while in a turn if in IFR conditions.
e. *Avoid abrupt maneuvers.*
f. Vector aircraft to VFR conditions.
(Emphasis added).

7. Section 1591. Radar Assistance to VFR Aircraft in Weather Difficulty
a. If a VFR aircraft requests radar assistance when it encounters or is about to en-

counter IFR weather conditions, ask the pilot if he is qualified for and capable of conducting IFR flight.
. . . .
c. If the pilot states he is not qualified for or not capable of conducting IFR flight ... take whichever of the following actions is appropriate:
(1) Inform the pilot of airports where VFR conditions are reported, provide other available pertinent weather information, and ask if he will elect to conduct VFR flight to such an airport.
. . . .

8. The District Judge concluded:
Obviously, had Rawl not been flying that night, his crash would not have occurred. But, once he came within the ambit and authority of the RAPCON, those controllers had a duty to use reasonable care to bring him in safely, which duty and resulting breach thereof were not reasonably foreseeable, and, thus, intervened to preclude the causal connection to any negligence by Rawl.
Slip op. at 40–41.

cation of the doctrine of "intervening and superseding cause" to the facts adduced at trial was wrong as a matter of law, we vacate the judgment below, and direct entry of a judgment in the government's favor.

■■■ Of course, we are aware of the limits placed upon us as an appellate court reviewing a trial court decision. We may not overturn findings of fact unless they are "clearly erroneous." Fed.R.Civ.P. 52(a) ("Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of witnesses."); *Pullman-Standard v. Swint*, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). The clearly erroneous rule applies even when the trial court's findings are based upon physical or documentary evidence, or inferences from the facts. *Anderson v. City of Bessemer City*, — U.S. —, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). In the case *sub judice*, however, we find a mistake in the rule of law, or perhaps, a mistake in the application of law to the facts. Characterized in either fashion, the situation permits us to correct the error in the district court.[9]

The common law doctrine of contributory negligence has deep roots in South Carolina law. The rule has been described as:

> a want of ordinary care upon the part of the person injured by the actionable negligence of another, combining and concurring with that negligence, and contributing to the injury as a proximate cause thereof, without which the injury would not have occurred.

*Easler v. Railway Co.*, 59 S.C. 311, 322, 37 S.E. 938, 941 (1901); *accord Horne v. Atlantic Coast Line R. Co.*, 177 S.C. 461, 469, 181 S.E. 642, 646 (1935). Generally, under South Carolina law, a finding of contributory negligence on the part of the plaintiff bars recovery of damages from the defendant. *See* 57 Am.Jur.2d § 288 ("[T]here can be no recovery of damages for negligence if the injured person, by his own negligence, or by the negligence of another legally imputable to him, proximately contributed to the injury."); *Horne*, 177 S.C. at 471, 181 S.E. at 647.

The government argued at trial that Rawl was contributorily negligent in two respects: First, Rawl persisted in his plan of landing at Grand Strand airport despite deteriorating weather conditions (about which he knew or should have known) and despite difficulties of other pilots, at least one of which Rawl knew about; second, Rawl could have avoided spatial disorientation had he maintained proper instrument skills. Without passing on these assertions for the moment, it is at least true that Rawl flew in circumstances that a reasonable pilot with similar qualifications, or, perhaps, more accurately, with similar lack of qualifications, would have shunned. He flew from Grand Strand under deteriorating conditions and after accepting an IFR flight clearance for which he was not qualified. When he departed Greenville on the return flight, he knew or should have known that conditions precluded VFR landing at Grand Strand. He insisted upon landing at Grand Strand despite the conditions there, the difficulties experienced by the Cessna in landing,[10] and his own lack of instrument flight training. The district

9. Though some courts have taken the view that the clearly erroneous standard applies to mixed questions of law and fact, *Manning v. Trustees of Tufts College*, 613 F.2d 1200 (1st Cir.1980); *United States v. McConney*, 728 F.2d 1195 (9th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984), a greater number have held that an appellate court may exercise independent review. *Karavos Compania Naviera, S.A. v. Atlantica Export Corp.*, 588 F.2d 1 (2d Cir.1978); *First Nat. Bank v. Pepper*, 547 F.2d 708 (2d Cir.1976); *William B. Tanner Co. v. WIOO, Inc.*, 528 F.2d 262 (3rd Cir.1975); *Stafos*

*v. Jarvis*, 477 F.2d 369 (10th Cir.1973), *cert. denied*, 414 U.S. 944, 94 S.Ct. 230, 38 L.Ed.2d 168 (1973).

10. The district court's findings of fact indicate a belief that Rawl was unaware of the Cessna's problems in locating the airport, and in landing. However, Rawl was on the same frequency as that of the Cessna, and after the Cessna had landed, Rawl queried RAPCON as to the altitude at which the Cessna had broken through the cloud cover in descending to the runway.

court at least recognized that "had Mr. Rawl not been flying that night, his crash would not have occurred."

The district court, however, disposed of the issue by assuming *arguendo* that Rawl was negligent in flying when he did, but deciding that the negligence of RAPCON constituted an intervening and superseding cause of the accident and so Rawl's negligence was not contributory.

 From the facts, we conclude that, as a matter of law, Rawl was not only negligent, but contributorily negligent as well. Furthermore, we are satisfied that the doctrine of "intervening" and "superseding" negligence is inapplicable here. Superseding negligence is customarily a defendant's defense to the unforeseeable conduct of a third party or to unforeseeable intervening forces. For instance, in *Hensley v. Heavrin*, 277 S.C. 86, 282 S.E.2d 854 (1981), a woman suffered injury to her marriage and her emotions when a doctor erroneously found that she had become infected with syphilis. Among the damages, plaintiff attempted to recover from the doctor for injuries caused when her husband committed a battery against her. Based on the erroneous diagnosis, the husband had suspected that plaintiff had been unfaithful. The Supreme Court of South Carolina

held that the doctor could not be held accountable for the injury from the battery because the husband's reaction was an unforeseeable intervening cause of the injury. *Id.* at 87–88, 282 S.E.2d at 855. In *Matthews v. Porter*, 239 S.C. 620, 124 S.E.2d 321 (1962), the Supreme Court of South Carolina wrote:

> Evidence of an independent negligent act of a third party is directed to the question of proximate cause. To exculpate a negligent defendant, the intervening cause must be one which breaks the sequence or causal connection between the defendant's negligence and the injury alleged. The superseding act must so intervene as to exclude the negligence of the defendant as one of the proximate causes of the injury. (Citation).

239 S.C. at 628, 124 S.E.2d at 325. The doctrine of intervening and superseding negligence traditionally has not been asserted by a plaintiff against a contributory negligence claim by a defendant. It is usually a rule allowing a defendant to avoid liability where damages have been caused by a third party or a force that was entirely unforeseeable, so much so that it could hardly be said that the injury was the result of the defendant's negligence.[11] *See*

---

**11.** *See Prosser & Keeton on Torts* § 44 (1984) ("The question is always one of whether the defendant is to be relieved of responsibility, and the defendant's liability superseded, by the subsequent event.")

The problem of whether the superseding and intervening negligence theory is available only for the benefit of defendants may, however, be simply no more than a matter of labels, for the doctrine of intervening and superseding negligence is very similar to a rule of law which allows a plaintiff to avoid the consequences of contributory negligence by showing that his own negligence did not proximately cause the injury he suffered. Thus, contributory negligence will not bar recovery where the plaintiff can show that his own conduct did not expose him to a foreseeable risk of the particular injury that in fact occurred through the negligence of the defendant. *See Restatement of Torts* § 468 (1965) ("The fact that the plaintiff has failed to exercise reasonable care for his own safety does not bar his recovery unless his harm results from one of the hazards which make his conduct negligent."). The doctrine has been characterized in terms of lack of proximate cause: if

the harm that occurred was not a foreseeable hazard of plaintiff's negligence, the plaintiff may recover from defendant. The proximate cause of the injury was the defendant's intervening negligence, and the causal connection between the plaintiff's negligence and the injury was broken. *See Fahringer v. Rinehimer*, 283 Pa.Super. 93, 97–98, 423 A.2d 731, 734 (1980) ("[R]egardless of whether or not appellee was negligent, he is not ... barred from recovery, for his injury did not result from one of the hazards he was under a duty to foresee.").

Hence, even assuming that the district court in *Rawl* intended to apply the rule, of which *Fahringer* is an example, we cannot state, on the basis of the trial record, that Rawl has met the requirements to avoid the bar of contributory negligence. The hazard, spatial disorientation, was a foreseeable result of flying at night, in conditions of poor visibility, and without IFR training. The consequence, loss of control of the plane and death, was a foreseeable result. Even the cause, the negligence of RAPCON, was a foreseeable event. Thus, however the legal theory employed by the district court is denom-

Restatement of Torts 2d § 440 ("A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about").

 In any event, even accepting that the doctrine denominated intervening and superseding negligence may operate to immunize a plaintiff from a claim of contributory negligence, nevertheless, in the instant case, the government's negligence was not intervening or superseding. The negligence of RAPCON simply did not qualify as an entirely unforeseeable and unexpected force breaking the causal connection. The district judge did not discuss at length the elements of an intervening and superseding cause, and found simply that the negligence of RAPCON broke the causal connection with Rawl's negligence. Several considerations have traditionally been analyzed in deciding whether an intervening cause should be called superseding. For instance, courts have examined whether the harm caused was different in kind from that which would have followed from the defendant's negligence. *See Johnson v. Kosmos Portland Cement Co.*, 64 F.2d 193 (6th Cir.1933), *cert. denied*, 290 U.S. 641, 54 S.Ct. 60, 78 L.Ed. 557 (1933). Whether the operation or the consequences of the intervening cause "appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation" has been considered important as well. Restatement of Torts § 442(b) (1965). In addition, whether the intervening force acts independently of the situation or is a normal part of the situation must be considered, and whether the intervening cause is a third party's action or omission. *See Rulane Gas Co. v. Montgomery Ward & Co.*, 231 N.C. 270, 275, 56 S.E.2d 689, 694 (1949).

Under the aforementioned considerations, the district court's conclusion that RAPCON's negligence was an intervening and superseding cause is not supportable. Certainly the injury (spatial disorientation

resulting in a crash and the loss of life) is one of several types of harm that would normally flow from Rawl's negligence. Furthermore, error on the part of RAPCON, though it reflected a failure to observe a duty of care, was not so strange and extraordinary an occurrence as to be unforeseeable. · Finally, RAPCON's negligence was not a force independent of the situation and it was certainly not an action by a third party.

 The district court incorrectly applied the doctrine of intervening and superseding cause. The doctrine was intended ·to relieve a party of responsibility for injuries which he could not have foreseen and ultimately did not cause—injuries arising from a force or actor wholly outside of the circumstances of the original negligence.

Rawl's negligence and RAPCON's negligence were substantial, concurring causes of the crash. *See Odom v. Steigerwald*, 260 S.C. 422, 196 S.E.2d 635 (1973); *Smith v. Blackwell*, 250 S.C. 170, 156 S.E.2d 867 (1967) ("In order to be contributory, the negligence of an injured person must combine and concur with the negligence of another as a proximate cause of the injury."); *Seay v. Southern Ry.*, 205 S.C. 162, 174, 31 S.E.2d 133, 138 (1944). Our conclusion does not represent a redetermination of a finding of fact made by the district court; it is the application of a different, and correct, legal standard to the facts as developed in the record.

 The record on appeal and the findings of fact by the district court show clearly that Rawl was negligent in attempting to land his aircraft at the Grand Strand airport at Myrtle Beach under the circumstances. Rawl had ultimate responsibility for his aircraft, and had a duty to exercise care to avoid unreasonable hazards. *Mattschei v. United States*, 600 F.2d 205, 208 (9th Cir.1979) (obligation to exercise due care is "a concurrent one resting on both the control tower personnel and the pilot."). Rawl violated that duty of care by flying back to Grand Strand after dark, in weather conditions that he knew or should have known would bar a VFR landing.

inated is of little consequence since the result is the same under either.

Upon approaching Grand Strand airport, he had readily to perceive that landing would not be possible in VFR conditions. Rawl lacked instrument flight qualification. He knew that at least one other plane with Special VFR clearance landed only with great difficulty. Despite the foregoing, Rawl insisted upon landing at Grand Strand in order to avoid missing a business dinner party in Myrtle Beach for which he was the host.

Finally, Rawl accepted IFR clearance upon departure from Grand Strand, a clearance he was not qualified to accept, and accepted Special VFR clearance to land at Grand Strand, despite the fact that pilots with only VFR qualification may not accept Special VFR clearance after sunset. We conclude that Rawl's negligence was a concurrent proximate cause of the crash, and under the doctrine of contributory negligence, operated to bar recovery from the government.[12]

REVERSED.

---

**12.** Numerous cases, on varied facts, have held that a pilot's carelessness constituted contributory negligence. *See, e.g., Kullberg v. United States,* 271 F.Supp. 788 (W.D.Pa.1964); *Somlo v. United States,* 416 F.2d 640 (7th Cir.1969), *cert.* *denied,* 397 U.S. 989, 90 S.Ct. 1122, 25 L.Ed.2d 397 (1970); *Michelmore v. United States,* 299 F.Supp. 1116 (C.D.Cal.1969), *aff'd sub nom., Spaulding v. United States,* 455 F.2d 222 (9th Cir.1972).